**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 5:23-cr-00021-DCR-MAS** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **AUSTIN LEE GLADD,** | ) | |
| | ) | |
| **Defendant.** | | |

**DETENTION OPINION & ORDER**

The Indictment alleges Defendant Austin Lee Gladd ("Gladd") produced a visual depiction of a minor engaged in sexually explicit conduct and coerced a minor to engage in sexually explicit conduct for the purpose of producing visual depictions of that conduct in violation of 18 U.S.C. § 2251(a) and 18 U.S.C. 2422(b), respectively. [DE 1]. The United States orally sought detention per 18 U.S.C. 3142(f)(1)(A), (B) and (E). [DE 8]. The Court conducted a detention hearing and afforded both sides all rights outlined in the Bail Reform Act ("BRA"). [DE 12]. Per Federal Rule of Appellate Procedure 9(a) and for the reasons discussed in this opinion, the BRA requires Gladd's detention.

## I.    BRA FRAMEWORK

The BRA imposes a presumption that the defendant should be detained because of the charges in the Indictment. 18 U.S.C. § 3142(e)(3)(E). The BRA and *United States v. Stone*, 608 F.3d 939, 945–46 (6th Cir. 2010), frame the resulting

1

inquiry.  The presumption imposes on the defendant a threshold "burden of production"; in response, "he must introduce at least some evidence" that he poses neither a flight nor a danger risk.  *Stone*, 608 F.3d at 945; *see also United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) (imposing a responsive burden on the defendant to produce "some evidence that he will not flee or endanger the community if released"); *United States v. Hernandez*, No. 1:02-CR-006, 2002 WL 1377911, at *2 (E.D. Tenn. Feb. 27, 2002) (requiring the defendant to "produc[e] probative, credible evidence to rebut the presumption and support his contention that he will appear . . . and [that] he does not pose a danger").  The production burden "is not heavy," and the Government retains the ultimate burden of persuasion.  *Stone*, 608 F.3d at 945. An unrebutted presumption requires detention.  A rebutted presumption remains a pro-detention statutory factor.  *See id.* ("The presumption remains as a factor because it . . . reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial.").

Where a defendant rebuts the presumption, the burden shifts back to the United States.  Detention premised on nonappearance requires preponderant evidence.  *See, e.g.*, *United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir. 1991); *United States v. Curry*, No. 6:06-CR-82-DCR, 2006 WL 2037406, at *6 (E.D. Ky. July 18, 2006).  Danger-based detention, however, demands clear and convincing evidence that no combination of conditions will reasonably ensure community safety.  18 U.S.C. § 3142(f).  The analyses are distinct.  Conditions that sufficiently target nonappearance risk may not adequately address danger.  *See United States v.*

2

*Mercedes*, 254 F.3d 433, 436-37 (2nd Cir. 2001).  Further, condition effectiveness inherently hinges on a defendant's predicted good faith compliance.  *See United States v. Tortora*, 922 F.2d 880, 887 (1st Cir. 1990) (characterizing predicted compliance as critical release component); *United States v. Hir*, 517 F.3d 1081, 1092 (9th Cir. 2008) (noting the "critical flaw" in a set of proposed release conditions: "In order to be effective, they depend on [the defendant's] good faith compliance."); *id.* at 1093 n.13 (observing that, barring a "replica detention facilit[y]," the success of any condition combination necessarily "hinge[s] on [the defendant's] good faith compliance").

Evidence rules do not apply in the detention hearing context.  18 U.S.C. § 3142(f).  The key is simply evidentiary reliability and accuracy.  *See, e.g.*, *United States v. Webb*, 149 F.3d 1185 (Table), No. 98-1291, 1998 WL 381686, at *1 (6th Cir. June 22, 1998).  Given hearing informality, the Court properly considers a wide range of proof.  The nature and quality of proof, though, impacts its probative value and weight in the detention calculus.  The § 3142(g) factors ultimately drive the overarching analysis.

## I.   <u>ANALYSIS</u>

Gladd rebutted the presumption as to both nonappearance and danger risks.  The Government has not shown, by a preponderance of the evidence, that Gladd presents a risk of nonappearance.  However, based upon the balance of BRA factors, the Court finds that the United States has demonstrated by clear and convincing evidence that no combination of conditions can adequately address Gladd's serious

risk of danger to the community or reasonably assure the safety of others under the circumstances. Danger-based detention is warranted.

## A. RISK OF NONAPPEARANCE

To rebut the presumption as to nonappearance, Gladd presented the testimony of his mother, Connie Gladd ("Connie" for purposes of clarity in this record) and relied on the Pretrial Services Report. [DE 13; Pretrial Services Report ("PSR") at DE 14]. Gladd has been residing in an outbuilding on her property for the past two years. Connie testified that she would prevent Gladd from accessing her Internet, including by disconnecting it if necessary, and assist Gladd in attending Court. This evidence rebuts the presumption as to nonappearance risk. *See* 18 U.S.C. § 3142(g)(3)(A) (considering the defendant's family ties and record concerning length of residence in the community).

In turn, the United States, considering the balance of relevant BRA factors[1] and the conditions available, has not shown by a preponderance of the evidence that no conditions can reasonably assure that Gladd will appear in this case. The Government did not seriously argue otherwise.

The first factor, the nature and circumstances of the offenses charged, weighs in favor of detention based on nonappearance. 18 U.S.C. § 3142(g)(1). Though Gladd rebutted the presumption, it remains a pro-detention consideration in both the nonappearance and danger contexts. *Stone*, 608 F.3d at 945. Additionally, the

---

[1] The fourth BRA factor, the nature and seriousness of the danger risk, is not applicable in this context and the Court omits it from the flight analysis.

mandatory minimum 15- and 10-year imprisonment terms accompanying Count 1 and 2 respectively in this case incentivize nonappearance to some degree. *See United States v. Shuklin*, No. 19-4171, 2020 WL 2992522, at *1 (6th Cir. Mar. 18, 2020) (observing that "significant penalties . . . provide a strong incentive to flee").

The second factor, however, does not weigh in favor of detention based on nonappearance. The second factor is "the weight of the evidence against the person[.]" 18 U.S.C. § 3142(g)(2). In the nonappearance context, this looks only toward the weight of nonappearance risk evidence, not toward the weight of proof of the defendant's guilt. *See United States v. Sykes*, No. 04-cr-80623, 453 F. Supp. 3d 1011, 1015–16 (E.D. Mich. Apr. 13, 2020) (citing *United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010)) (noting that, in this Circuit, the § 3142(g)(2) factor looks only to the weight of the evidence that the defendant is a flight risk or a danger); *accord United States v. Sanders*, 466 F. Supp. 3d 779, 785 (E.D. Mich. 2020). There is no proof on this record that Gladd would fail to appear. Gladd has no prior failures to appear or criminal history associated with fleeing or evading prosecution.

The third and final flight factor also would favor release. Gladd maintains close relationships and frequent contact with his mother and sister. [PSR at 1]. He has no history of international travel or apparent resources to flee. He also lacks any substance use disorder. *Cf. United States v. Valentin-Cintron*, 656 F. Supp. 2d 292, 296 (D.P.R. 2009) (observing that a "frequent drug user . . . constitutes a 'flight risk.'"). And, though not entirely consistent or recent, Gladd does have some work history. [PSR at 2]. For these reasons, this factor favors release when considering

5

nonappearance-based detention.  *See* 18 U.S.C. § 3142(g)(3)(A) (considering the defendant's past conduct and record, employment, substance use history, length of residence in the community, family ties, and history of appearances).

Given the low likelihood of nonappearance on this record, the Court is confident that conditions such as home detention and electronic monitoring could reasonably assure Gladd's appearance at all future proceedings in this case, despite the lengthy penalties and serious alleged offenses at issue.  *See United States v. Demmler*, 523 F. Supp. 2d 677, 684 (S.D. Ohio 2007) (finding that GPS monitoring could "adequately alert law enforcement if [the defendant] attempts to flee" and concluding that "given the otherwise low likelihood of flight[,]" it would adequately safeguard against any nonappearance risk).  Thus, the United States has not shown by a preponderance that no conditions can reasonably guard against nonappearance, and detention on this basis is unwarranted.

**B.   RISK OF DANGER**

Though barely, Gladd also overcame the presumption as to danger risk.  Gladd emphasized his lack of criminal history.  Connie testified she would limit and monitor Internet and device access if Gladd were released to her home.  These facts present some credible, probative evidence that conditions could potentially protect the community upon Gladd's release; they thus meet the low production burden to overcome the presumption.  *Dominguez*, 783 F.2d at 707 (demanding "some evidence" the defendant is not a danger to the community in presumption cases); *Hernandez*, 2002 WL 1377911, at *2 (requiring "probative, credible evidence to rebut the

6

presumption"). However, though rebutted, the presumption remains as a pro-detention factor in the overall danger analysis. *See Stone*, 608 F.3d at 945.

For the reasons discussed below, each of the BRA factors weighs in favor of finding that Gladd presents a serious risk of danger to the community. Moreover, the proposed release conditions (including release to a residence with minors nearby) do not reasonably assure the Court that Gladd will not threaten the safety of others if released. Accordingly, the United States has proven by clear and convincing evidence that no conditions can reasonably assure community safety.

### 1. NATURE AND CIRCUMSTANCES OF THE OFFENSE

The first BRA factor is the "nature and circumstances of the offense charged, including whether the offense . . . involves a minor victim[.]" 18 U.S.C. § 3142(g)(1). The alleged offenses in this case are among a category of offenses that Congress has deemed particularly dangerous and typically appropriate for pretrial detention. The nature of the offenses thus weighs in favor of detention. The alleged offense circumstances here, discussed in additional detail below, involved several minors age 14 or younger, are extremely dangerous and aggravating. *See United States v. Downsbrough*, No. 3:13-CR-61, 2013 WL 2447858, at *1 (E.D. Tenn. June 5, 2013) (concluding that "the nature and circumstances of the offense weigh[ed] in favor of detention because the charged offenses involve[d] minor victims"); *United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003) (observing that "[d]etaining adults who prey on children for the adult's sexual gratification . . . is [ ] a legitimate government objective" justifying pretrial detention); *United States v. Demarcus Bristuan*

7

*Fitzhugh*, 2016 WL 4727480, at *5 (E.D. Mich., Sept. 12, 2016) ("*Just one* sexually-related offense against *just one* minor is enough to imply dangerousness.") (emphasis in original); *United States v. Music*, No. 107-CR-21-R, 2007 WL 2067057 (W.D. Ky. July 16, 2007) (revoking an order releasing a defendant pending trial when defendant was guilty of an offense against a minor, but had no prior criminal history). Accordingly, the first factor is strongly pro-detention.

### 2.   WEIGHT OF THE EVIDENCE OF DANGEROUSNESS

The next consideration gauges "the weight of the evidence against the person." 18 U.S.C. § 3142(g)(2).  "This factor goes to the weight of evidence of dangerousness, not the weight of the evidence of defendant's guilt."  *Stone*, 608 F.3d at 948.  Based on Gladd's persistent prurient interest in children, the record demonstrates that he presents a serious risk of danger if released.

At the detention hearing, FBI Task Force Officer Stanley Williams ("Williams") testified that investigators became aware of Gladd when a mother reported to local police that her 12-year-old daughter ("Victim 1") had had sex with an adult male. Williams testified that the investigation ultimately led to a review of SnapChat conversations between Victim 1 and Gladd.[2]  The United States produced copies of these conversations, which included Gladd telling Victim 1 he wanted to get her pregnant and film it.  Williams described voice memos between Gladd and Victim 1 in which Gladd tells Victim 1 that he previously had a 14-year-old "girlfriend," at

---

[2] Williams testified the Danville Police Department took steps to confirm the SnapChat account that was communicating with Victim 1 belonged to Gladd.

which point Victim 1 tells Gladd that she is only 12 years old.  According to Williams, Gladd confirmed to Victim 1 that he "still loved her" and "still wanted to have sex with her."  [Recording at 22:00-34].  Gladd also suggested he have sex with Victim 1's underage friend, and that Victim 1 send him videos of herself and her friend in the shower together.  Ultimately Gladd and Victim 1 engaged in sexual intercourse, which he filmed with his cell phone.[3]  Both his face and the victim's face are visible in the video according to Williams.  Just before this sexual contact, Gladd and Victim 1 had a text conversation on SnapChat in which Gladd asked Victim 1 what color underwear she was wearing, and she responds that she was wearing purple thongs. Law enforcement later obtained and executed a search warrant at Gladd's residence. During the search they found purple thong underwear identified as Victim 1's panties from the video of Gladd and Victim 1 engaging in sexual intercourse.  Law enforcement also found toddler-size girls' panties during that search.  Williams testified law enforcement also seized Gladd's cell phone and searched it.  The phone contained additional videos of Victim 1 engaged in sexual conduct as well as other child sexual abuse material.

Williams further testified that, as the investigation developed, law enforcement learned that other FBI field offices were also investigating Gladd for

---

[3]  If proven, a more appropriate term for this conduct is "rape in the second degree." *See* KRS 510.050 ("A person is guilty of rape in the second degree when: (a) Being eighteen (18) years old or more, he or she engaged in sexual intercourse with another person less than fourteen (14) years old [.]").  In fact, Gladd was charged with Rape 2nd as well as several other related state offenses arising out of this incident, but those charges were dismissed when the federal prosecution commenced.

online crimes against children.  The FBI field office in Saint Paul, Minnesota, received a complaint from the mother of a 12-year-old girl that her daughter ("Victim 2") was being targeted by an adult male on SnapChat who authorities ultimately discovered was Gladd based on his telephone number.  The United States produced the content of the chats between Victim 2 and Gladd at the detention hearing.  The chats were, essentially, Gladd blackmailing Victim 2 by posting or threating to post her nude or embarrassing photos online unless she sent him additional photos and videos (". . . how about u send me a video of u playing with yourself every day for 30 days . . . I'll get them gone for that").  [DE 13, Ex. 3F].

Finally, and as a lesser matter but still a concern, the Court notes Gladd's history of a weapons offense.  While this alone is not determinative, when considered with the details of the offense here, the coercive and predatory nature of the alleged messages Gladd is alleged to have sent to Victims 1 and 2, and the violent nature of a sex crime against a child, the danger of a prior weapons offense becomes much greater.  For these reasons, the second factor firmly favors Gladd's detention based on danger.

### 3.    HISTORY AND CHARACTERISTICS OF THE PERSON

The third factor focuses on the defendant's history and characteristics.  *See* 18 U.S.C. § 3142(g)(3).  Positive considerations include the fact that Gladd does not have an extensive criminal history, nor does he have a history of substance use.  18 U.S.C. § 3142(g)(3).

However, Gladd's mother testified to chilling details about Gladd's past. He has a history of mental illness—which, standing alone, is not a reason for detention, but is a BRA mandated consideration. *See* 18 U.S.C. § 3142(g)(3) (Courts must consider the person's "physical and mental condition"). Gladd told USPO he has been diagnosed with "schizotypal personality disorder" as well as other conditions he could not name. His mother testified Gladd has not taken his medication for his mental health conditions in many years. Connie stated she became concerned about Gladd when he was younger when he began stealing his sister's panties. This, and other unspecified behavior, eventually led Connie to refuse to allow Gladd to access the Internet at her house, and she got him a cell phone without Internet capabilities. Connie testified she later discovered that Gladd circumvented these restrictions by obtaining a secret smart phone.

When the Court considers these details from Gladd's past with the charges at issue, the investigations in other districts as testified to by Williams, his prior weapons conviction, and his lack of employment, against Gladd's positive characteristics, the negatives far outweigh the positive.

### 4.   NATURE AND SERIOUSNESS OF THE DANGER

The fourth and final factor is "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). Gladd has shown himself to be dangerous to children if he has the opportunity to communicate with them. He is alleged to have raped Victim 1 and filmed the incident on his cell phone when she was only 12 years old, and his text

messages indicate he did so with the intent of getting her pregnant. Even where there is no contact with an actual child, as in the case of the other communications and coerced photographs from Victim 2 allegedly found in Gladd's possession, courts have found that engaging with child exploitation materials causes real, lasting harm to real victims and may warrant detention based on danger under the BRA. *See United States v. Pece*, No. 1:20-CR-186-1, 2020 WL 6263640, at *6–7 (N.D. Ohio Oct. 23, 2020) (recognizing the danger of such images because they "permanently records the victim's abuse, and [their] continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years"); *see also United States v. Kinison*, No. 5:12-CR-57-JBC-REW, 2012 WL 4433296, at *4 (E.D. Ky. Sept. 24, 2012) (finding substantial danger risk where evidence demonstrated that the defendant had "a plain, prurient interest in children" and had been handling child exploitation materials). Based on the proof already in the record, it appears that over a long period of time, starting with his own sister, Gladd has had a sexual interest in young girls that he has repeatedly acted upon.

Accordingly, because the danger in this case involves alleged statutory rape of 12 year old child, production of child sex abuse material, coercion of other children under the age of 14 to produce child sex abuse materials, possession of child exploitation images, possession of child-sized underwear, a history of untreated mental illness, and noncompliance with his mother's restrictions on his concerning behavior, the Court finds that the United States has proven that by clear and convincing evidence that Gladd poses a risk of danger to others and the community.

### 5. AVAILABILITY OF MITIGATING CONDITIONS

Lastly, the Court concludes that no combination of available conditions adequately guards against the danger that Gladd presents. Concerningly, Gladd proposes to be released to his prior residence on Connie's property, where minor children reside nearby, and where he has previously circumvented Connie's restrictions on his Internet and cell phone use. Rather, given the nature and seriousness of the dangers here, release to a home with minor children nearby does not adequately assure the safety of others in the Court's view. Additionally, as Connie testified that she previously tried and failed to limit Gladd's access to the Internet, the Court is not persuaded that it could do so now. *See, e.g.*, *United States v. Foster*, No. 20-5548, 2020 WL 6791572, at *3 (6th Cir. July 20, 2020), *cert. denied*, 141 S. Ct. 1073, 208 L. Ed. 2d 533 (2021) (emphasizing the inherent difficulty in limiting and policing a child exploitation defendant's device and internet use in light of modern technology).

Ultimately, in considering release to Connie's residence as proposed, the Court is not reasonably assured that it can successfully limit either Gladd's contact with actual minor children or his access to the Internet and to electronic devices. The Government has thus shown by clear and convincing evidence that no conditions can address the serious risk of danger that Gladd presents.

## II. CONCLUSION

For the stated reasons, the Court finds that there are release conditions that can reasonably assure Gladd's appearance at future proceedings. The Court also

finds, however, that the United States has shown by clear and convincing evidence that no such conditions could reasonably assure the safety of others and of the community in this case.

Accordingly, the Court **GRANTS** the United States' oral detention motion. Gladd shall remain in custody pending trial. The parties may appeal this Order under the terms of 18 U.S.C. § 3145(a).

Entered this the 24th day of March, 2023.

MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY